# CHARLESTON.

## John W. McCullough v. H. E. Clark

Submitted February 8, 1921.   Decided February 22, 1921.

1. APPEAL AND ERROR—*Verdict on Conflicting Evidence Not Set Aside Unless Indicating Passion or Prejudice.*

   The verdict of a jury, based upon conflicting evidence, will not be set aside, unless the evidence so strongly preponderates against the verdict as to indicate that the jury was moved by passion, prejudice, or some other improper influence.   (p. 30).

2. SAME—*Verdict Presumed Based on Evidence; Verdict for Damages Will Not be Disturbed if Within Estimates in Testimony.*

   There is a presumption that the verdict of a jury is based upon a fair consideration of all matters presented to it, and if in an action for damages for breach of a contract the evidence does not certainly fix the amount of such damages, but depends upon varying amounts fixed by different witnesses, the verdict will not be disturbed if the amount found is within the estimates given in the testimony.   (p. 37).

3. SAME—*Jury Will Not be Considered to Have Included Items Not Supported by Evidence.*

   In an action for damages for breach of contract it will not be held that the jury included an item not supported by the evidence and rejected in toto another finding support in the evidence, upon the sole ground that to include such improper item with others found by the jury will make the exact amount of the verdict, while to exclude such item and include the whole of the item finding support in the evidence would make an amount in excess of the verdict.   (p. 40).

4. SALES—*Measure of Damages for Breach of Contract to Deliver Personal Property at Definite Time Stated.*

   Where, in an action for breach of a contract, it appears that the plaintiff was entitled to receive certain personal property at a definite time, his measure of damages is the value of such property at the time and place it should have been delivered to him, less any amount remaining unpaid upon the purchase money, with interest thereon to the date of the verdict.   (p. 43).

5.  Trial—*Instruction Defining "Preponderance of Evidence" Held Not Improper.*

An instruction properly defining the term "preponderance of the evidence" is not improper in a case where the jury has been instructed that certain elements must be proven by a preponderance of the evidence, even though there are other elements which the jury have been instructed must be proved by evidence clear, full and convincing.   (p. 44).

6.  Appeal and Error—*Improper Argument Not Considered in Absence of Request for Instruction.*

This court will not consider errors predicated upon the abuse of counsel of the privilege of argument, unless it appears that the complaining party asked for and was refused an instruction to the jury to disregard the improper remarks, and duly excepted to such refusal.   (p. 47)

Error to Circuit Court, Upshur County.

Action by John W. McCullough against H. E. Clark. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Samuel T. Spears* and *Talbott & Hoover,* for defendant in error.

*Young & McWhorter* and *J. M. N. Downes,* for plaintiff in error.

Ritz, President:

The defendant by this writ of error seeks reversal of a judgment against him for the sum of $203,907.28, for damages for the breach of an alleged contract for the sale of certain corporate stock.

Plaintiff and defendant for many years had been business associates, and in the spring of 1915 were jointly interested in lumber operations in the State of West Virginia, carried on in the name of Virginia Lumber Company, and in like operations in Virginia, Tennessee and North Carolina, conducted in the name of Damascus Lumber Company. In addition to these companies, in which they had a common interest, there were some other concerns in which they were likewise jointly interested, but which are only incidentally involved in this litigation. In addition to the interest which the defendant had in common

with the plaintiff, he was largely interested in many other concerns with which the plaintiff had no connection. For a few months prior to April, 1915, the Virginia Lumber Company and the Damascus Lumber Company, owned and controlled by the parties to this suit, were having trouble in carrying on their affairs. The plants had, to a large extent at least, closed down, and the parties were having difficulty in securing sufficient funds to meet the outstanding obligations. Many conferences were had between McCullough and Clark with a view of devising means to put these concerns on a sound financial basis. In addition to needing money for the purpose of taking care of these companies, Clark also needed considerable sums of money to take care of his other interests. It sufficiently appears that both of the parties had plenty of assets to take care of their liabilities, their difficulty being in providing liquid assets as the same were needed. McCullough claims that after a conference lasting over several days Clark proposed to him that he would sell his interest in the Virginia Lumber Company for the sum of $325,000.00, and in the Damascus Lumber Company for the amount that he had invested in that company, less such amounts as had been withdrawn therefrom by him, with interest compounded every four months; or, that he would buy McCullough's interests in these companies on the same basis, the proposition being indivisible, contemplating the purchase or sale of both properties at the same time; that he considered this proposition and came to the conclusion that he and his associates could handle the same, and on the 24th of April, 1915, in the city of Philadelphia, accepted Clark's proposition to sell on the above terms; that this was late on Saturday evening, and for that reason the matter of preparing the formal contracts was deferred until the next Monday; that he communicated with Mr. Bowers, who was interested with him in the Virginia Lumber Company proposition, and procured his attendance at Philadelphia on Monday with a view to having him render financial assistance in making the purchase; that he and the defendant Clark spent a large part of the next day, Sunday, the 25th of April, at the Manufacturer's Club, and talked over to a considerable extent the transaction which had been concluded on the day before;

that on Monday morning Mr. Bowers arrived and he explained
to Bowers what he had done, and Bowers agreed to take some
further interest in the Virginia Lumber Company upon the
basis of the purchase made by McCullough; that they then went
to Clark's office for the purpose of putting their agreements in
writing; that Clark was informed that Bowers would be jointly
interested with McCullough in the Virginia Lumber Company
proposition, but would not take any interest in the Damascus
purchase, for which reason it would be necessary to make separ-
ate contracts covering the sale of his interest in each of these
companies; that this was satisfactory to Clark, and they began
the preparation of a contract in writing, which is introduced
into the record, evidencing the sale of Clark's interest in the
Virginia Lumber Company to McCullough and Bowers. It
appears that the parties were engaged in the preparation of this
contract practically the whole of the day, Bowers and Mc-
Cullough being of the opinion that it was about five o'clock when
the same was completed and executed by the parties, and Clark
stating that in his opinion it was even later than that. After
this contract was concluded, McCullough claims that he then
called upon Clark to prepare the contract showing the sale of
his interest in the Damascus Lumber Company to him, and that
Clark replied that it was then late, and that he had some im-
portant mail requiring attention, and asked him and Bowers to
go to the hotel, and when he had attended to his pressing affairs
he would come down and join them at supper. In this he is cor-
robrated by Bowers. He and Bowers did leave Clark's office
and went to the Walton Hotel where they awaited Clark's ap-
pearance. Sometime later Clark, in accordance with his
promise, did appear, and the three had supper together. Mc-
Cullough says that while they were at the hotel, and during the
course of the meal, he took up with Clark again the matter of
the preparation of a formal written contract evidencing his
purchase of Clark's interest in the Damascus Lumber Company,
and that Clark then advised him that it would be impossible
to prepare this contract until they had had an audit made of
the Damascus Lumber Company's accounts, and the amount
coming to him thus determined; that he, McCullough, insisted

that this was not necessary; that in the written contract the consideration could be specified in a general way, and could thereafter be determined by an audit made of the company's business; that Clark protested against preparing the contract in this way, and that some heated conversation followed; and that instead of preparing the Damascus Lumber Company contract the next morning, as McCullough insisted should be done, Clark left the city. As to what happened at the hotel on this occasion, McCullough is corroborated by Bowers, who was present and heard the conversation. Clark contends that Mc-Cullough never mentioned to him the matter of preparing any contract for the sale of his interest in the Damascus property at his office after the contract evidencing the sale of the Virginia Lumber Company interests had been concluded, but he admits that McCullough did insist on the preparation of this contract at the Walton Hotel, but contends that he then and there repudiated the idea that he had made any sale of his interest, and told McCullough that when they had an audit made and found how they stood he would then be willing to consider a proposition for the sale of his interest. McCullough and Bowers interested some other parties with them in the Virginia Lumber Company purchase, and for the next few months the parties seem to have been pretty closely engaged in concluding the transfer of these interests from Clark to McCullough and his associates. This transaction was finally consummated with a slight modification on account of a vendor's lien on some of the property, which it was agreed should be taken care of by the purchaser instead of by Clark, as had been originally designed. McCullough contends that at various times after the April transaction he demanded of Clark that he perform his contract by turning over to him his interest in the Damascus Company, and that Clark never at any time denied that he had made the contract, but always insisted that he could not finally consummate it until an audit of the company's affairs was made, and the amount to be paid to him determined, while Clark contends that McCullough never on any of these occasions made any contention that he had purchased his Damascus Lumber Company interest, but did make various propositions for a

purchase of his interest in that company, or for a sale to Clark of his, McCullough's interest, and that Clark always advised him that as soon as the audit was made and the status of affairs determined, he would consider a proposition along that line. It seems that the Thayer Company was indebted to the Damascus Lumber Company in a considerable sum of money, the exact amount of which depended upon a settlement with that company. In the fall of the year 1915, McCullough wrote this company advising it, among other things, that he had bought Clark's interest in the Damascus Company, and was then the sole owner of it, and that he desired a settlement of the outstanding balance. A copy of this letter he forwarded to Clark. Clark, upon receipt of it, responded repudiating the statement that McCullough had acquired his interest in the Damascus Lumber Company, and McCullough contends that this is the first time that Clark ever did deny to him that he had not sold his interest upon the terms above indicated. A representative of the Thayer Company did meet Clark and Mc-Cullought in Philadelphia in the early part of December, 1915, and a settlement was made of the accounts between the two concerns, and that company paid the balance which it owed amounting to about $45,000.00. McCullough says at this time he again insisted on Clark having an audit made, and that Clark then promised him that he would at once send for the bookkeeper of the Damascus Lumber Company, who was stationed at Damascus, Virginia, and have him bring all of his books and records to Philadelphia, and together with his secretary, Mr. Van Every, an audit would be made, and just as soon as the amount to be paid him under the terms of the contract was thus ascertained he would conclude the transaction. This was on the second day of December, 1915. Clark admits that he did agree to send for Mr. Midlam, the company's bookkeeper at Damascus, for the purpose of having an audit made of all the affairs of the Damascus Company, with a view of ascertaining how each of the parties stood, so that he could either make McCullough a propostition to purchase his interest, or else McCullough make him one to acquire Clark's interest in that company, and insists that this was the only purpose in having an audit made.

McCullough, it appears, went to the Damascus Lumber Company's operation at Damascus, Virginia, immediately after this meeting, and while there inquired of Mr. Midlam, the book-keeper, whether he had been requested by Mr. Clark to bring his books and records to Philadelphia for the purpose of making this audit with Mr. Van Every, and upon being advised that he had not received any such directions McCullough wrote to Clark advising him that Midlam had not yet received directions to come to Philadelphia to proceed with the audit, and insisted upon Clark giving instructions at once. Subsequently Clark did write to Midlam and directed him to come to Philadelphia with all of the records of the Damascus Lumber Company to make the audit desired, working in conjunction with Mr. Van Every, Mr. Clark's private secretary, who had charge of Mr. Clark's books. Pursuant to these instructions, Midlam did come to Philadelphia and bring with him all of the Damascus Lumber Company's books. This was about the middle of March, 1916. Upon his arrival he and Mr. Van Every entered upon the work of making an audit under the supervision and direction of Mr. Clark and Mr. McCullough. They completed the work which they were directed to undertake sometime in the early part of May, 1916. This audit made by Midlam and Van Every was a complete exposition of the dealings that Clark had with the Damascus Lumber Company, and nothing more. It undertook to show all of the money paid into this company by Clark for the purchase of timber, the payment of taxes, and all other purposes, as well as all of the money withdrawn therefrom by him, and to ascertain the amount which Clark would be entitled to receive from the company as of the first day of May, 1915, compounding the interest on his balance each four months. No attempt was made by these auditors to ascertain the status of McCullough's affairs with the company. It will be observed that by this audit the amount which Clark was entitled to receive for his interest in the Damascus Lumber Company, in accordance with the contract claimed by McCullough, was ascertained, and this was the only thing that was ascertained. This amount was fixed as of the first day of May, 1915, the time at which McCullough says Clark was to turn over his interest. The amount was ascer-

tained by compounding the interest on the amounts advanced
by Clark to the company from the very beginning at four
months intervals, which McCullough says was the method
agreed upon in the contract between him and Clark for
the determination of the amount Clark was to receive for
his interest, and it is also further significant that the auditors
engaged upon this work went no further than to ascertain
the amount that Clark was entitled to as of the first day
of May, 1915. McCullough says that a few days before the
auditors completed their work he called Clark's attention to the
fact that the work was about done, and he wanted him to be
prepared to execute his contract for the sale of his interest when
the work was completed and the exact amount ascertained; that
Clark at that time told him that when the audit was completed
he would consider any proposition that he had to make, but
repudiated any arrangement theretofore made; that he insisted
upon Clark carrying out the contract he had made, but that
Clark told him he was not going to do so unless he had to;
that when the audit was completed he again called upon Clark
to carry out his part of the contract, and Clark refused to do
so, repudiated the same, and to escape from McCullough's im-
portunities left the city of Philadelphia, but kept in communica-
tion with his office over the telephone, and did not return until
he found that McCullough had also left for his home. Shortly
thereafter this suit was instituted to recover damages for the
failure upon the part of Clark to deliver his stock in the Dam-
ascus Lumber Company, in accordance with the contract of
purchase claimed by McCullough.

McCullough is supported in his contention as to the contract
between him and Clark by the testimony of several other wit-
nesses who heard conversations between the parties, in which
Clark in effect admitted making the contract, and his purpose
to carry it out when the audit was completed. On the other hand
Clark contends that there never was any contract between him
and McCullough for the purchase of his interest in the Damascus
Lumber Company; that he and McCullough were contemplating
a general settlement of all the affairs between them, and that
the audit made by Midlam and Van Every, above referred to,

was only made for the purpose of such a general settlement, and not with any view of fulfilling the contract of sale. There were some settlements made between the 26th of April and the time this audit was completed, but it appears that in these settlements there was no compounding of interest every four months, as in the audit made by Midlam and Van Every. Clark also introduced a number of witnesses who claimed to have had conversations with McCullough, or overheard conversations between McCullough and Clark indicating that negotiations were pending for the settlement of their interests in the Damascus Lumber Company, but that they did not come to any conclusion in regard thereto. The oral evidence upon the question of the existence of such a contract as is declared upon by the plaintiff is highly conflicting. Perhaps the strongest circumstance in support of McCullough's contention is the audit made by Van Every and Midlam. The manner in which this audit was made, the fact that it ascertained nothing but the amount that Clark would be entitled to receive because of his advancements to the company, with interest compounded every four months as of the first of May, 1915, is consistent only with the contention made by McCullough. This information would be entirely useless to Clark or McCullough in a general settlement of their affairs. It would not afford them any basis for a settlement of these affairs unless they also had the amounts advanced by McCullough and the amount that he would be entitled to receive upon the same basis. This was not ascertained, nor undertaken to be ascertained, and according to the auditors they acted under the direction of the parties to this suit. Clark does not undertake to explain why the auditors ascertained just the one thing which was necessary to complete the contract which McCullough claims he had with him.

The jury found in answer to a special interrogatory submitted that the contract sued on by McCullough was actually made, and we are asked to overthrow this verdict upon the ground that the evidence does not warrant it. If this finding depended alone upon the oral testimony of McCullough, supported as it is by other witnesses who were present at various times when he and Clark negotiated in regard to the contract, contradicted as such

oral evidence was, the jury might have had great difficulty in arriving at a correct solution of the controversy. A careful review of the record, however, convinces us that the audit of Clark's accounts with the Damascus Lumber Company made by Midlam and Van Every, as above stated, was a pillar of light guiding the jury in its deliberations to the only conclusion which could have been reasonably reached. This circumstance in the case was one which could not be changed by either of the parties to suit his subsequent convenience or interest. It indicated in no uncertain terms that McCullough's contention was correct, and that Clark was seeking to avoid the effect of his contract. It is consistent with no other theory execpt the one relied upon by McCullough for recovery. It would have been entirely useless for the purpose for which Clark says that it was made. It would have furnished no basis for a settlement between Clark and McCullough of their interests in the Damascus Lumber Company. It was made to speak as of the very day upon which McCullough says the interest was to be turned over to him, to-wit, the first of May, 1915, and it gave the information, and only the information, which was necessary for the parties to have in order to fully consummate the contract relied upon by Mc-Cullough. It would be strange, indeed, that these parties, business men of large experience, would have their bookkeepers engage for more than six weeks in this work unless the result of their labors was to be of some utility in the conduct of their affairs. Of course, this finding of the jury, even if it were based solely upon conflicting oral evidence, about which the court might be in doubt, would not be disturbed, but when the finding of the jury is supported by the circumstances above adverted to it is clearly justified by the evidence.

Defendant contends, however, that even assuming that the contract was sufficiently proven to justify the jury's verdict, the plaintiff is entitled to no such measure of recovery as was applied by the jury. It appears that Clark was the owner of 76 per cent. of the stock of the Damascus Lumber Company, which was a Delaware corporation. This corporation was organized in the fall of 1907. McCullough contends that prior to its organization he and Clark acquired considerable timber lands

lying in Virginia, North Carolina and Tennessee, and that at the time of the acquisition of this land it was agreed between them that they would form a corporation for the purpose of cutting the timber thereon, and to hold their respective interests; that the title to the land was taken in the name of Clark to be held by him in trust for himself and McCullough. Clark agrees that the title taken by him was taken in this way, that is to say, that McCullough had a one-fifth interest in all of this land, and he a four-fifths interest. When he and Clark determined that they would cut the timber and market it a mill was purchased from the Thayer Company, and this purchase was made in the name of Clark. A corporation was then organized, and subsequent to its organization some other tracts of timber were acquired, and the legal title was taken in the name of Clark. McCullough contends that Clark was to convey all of this land to the corporation, but that this was never done, and at the time this suit was instituted the legal title thereto was still vested in Clark. Clark insists that because of this fact it was error to allow the jury to consider the land and the standing timber thereon as an asset of the Damascus Lumber Company for the purpose of fixing the value of his stock therein, and in a former trial of this case his contention that this timber and land could not be included as such an asset was sustained by the lower court, and a verdict directed in his favor, which upon a writ of error to this court was reversed, this court holding that under the evidence introduced by McCullough it would be a question for the jury to determine whether or not this land and timber was in fact an asset of the Damascus Lumber Company. *McCullough* v. *Clark*, 81 W. Va. 743. Clark's insistence now is that the finding of the jury upon the evidence introduced upon this question should be set aside as contrary to the great preponderance of the testimony. On behalf of McCullough's contention, it appears that at the time he and Clark entered into the arrangement to acquire the Damascus Lumber Company's lands, they agreed to the formation of a corporation. This contention is sustained by the people employed by Clark and McCullough to make the purchases and otherwise represent them, several of them testifying that they were informed by both

Clark and McCullough that when the lands were acquired the corporation would be formed, and the interests turned over to it. McCullough insists that pursuant to this arrangement, while the legal title was not conveyed to the corporation when it was formed, the land was in fact turned over to the corporation; that it took possession thereof; that it paid all of the remaining unpaid purchase money, and even reimbursed Clark for the purchase money he paid on this land to practically the full extent that he had made such payments. Clark, on the other hand insists that when the corporation was organized a resolution was passed by the stockholders and the board of directors acquiring the right to cut the timber upon the lands held by him upon the basis of paying therefor certain prices per thousand feet for the different kinds of timber, the price being six dollars per thousand for the larger part thereof, and that the stock of this company by a like resolution was directed to be issued to him in payment for the mill purchased by him from the Thayer Company, and which had not yet been completed, as well as for the benefits arising from a contract entered into by him with the Thayer Company for the sawing of that company's timber at this mill, and the transportation of the Damascus Lumber Company's logs over that company's railroad. In this way he contends that he acquired all of the stock of the Damascus Lumber Company, and that the only interest which that company owned at the time of the institution of this suit was the mill and the right to cut the timber upon the lands owned by him at the prices mentioned in the resolution above referred to, and whatever advantages might be derived from the Thayer contract, which will be hereafter adverted to. If his contention is sustained, then there is no basis in the evidence for any substantial recovery upon the part of the plaintiff, even though the contract set up by him has been fully proven. It is insisted that, while we held on the former writ of error that the question arising as to the ownership of these assets was one for the jury, at that time only the evidence introduced on behalf of the plaintiff was before the court, and that with the introduction of the defendant's evidence the plaintiff's showing has been so overwhelmed that the jury could not find a verdict

for the plaintiff consistent with all of the evidence. It very clearly appears that at the time of the purchase of this timber and these lands immdiately before the organization of the Damascus Lumber Company, it was contemplated by the parties that a corporation would be formed for the purpose of holding their interests in that neighborhood. Not only McCullough testifies to this, but as before stated several other parties who were employed by Clark and McCullough in acquiring the timber likewise testify, and some of these other parties were to be allowed to take stock in this corporation, Clark agreeing to let them have some of the stock to which he would be entitled as representing his four-fifths interest in the properties. When the corporation was formed it did take possession of the mill, which had been theretofore acquired in an incomplete state, and complete the same, and did enter upon the land and cut the timber thereon and market the lumber derived theriefrom 'through Clark, as its selling agent, Clark receiving for all of the lumber thus sold by him five per cent. for his services. From 1907 until 1915 it does not appear that any payments were ever made by the company to Clark on account of the timber cut by it, nor does it appear that Clark ever demanded any payments upon this account. It appears that on his books he charged to the company the taxes paid by him upon the land, the money paid by him for the mill before the organization of the company, and the monies paid by him on account of the purchase of the land, both before and after the organization of the company, and credited the company with all monies received by him from the sales of lumber, less the five per cent. commissions. It is true that the minutes of the organization meeting of the Damascus Lumber Company show that a resolution was passed by its stockholders and its board of directors purchasing from Clark the Thayer contract including the mill acquired by him from the Thayer people, for all of the capital stock of the corporation fully paid and non-assessable. It is likewise true that the minutes show that Clark made a proposition to the company to sell it the timber upon the tracts of land standing in his name at certain stumpage prices, and it is testified by several witnesses that these resolutions were actually passed at those meetings.

McCullough, who was present at the directors' meeting, says that all of the work at that meeting was cut out before hand, and was passed in a few minutes, and that he does not know anything about such resolutions as these, his contention being that the minutes are fraudulent.  But whether they are or not, he insists that no such contract was ever carried out by the company, but that the contract which was carried out was the one existing between him and Clark, the only parties interested in the property, at the time of the formation of the company, to-wit, that the corporation should take over the properties, and the interests of Clark and McCullough should be evidenced by the issuance to them of the company's stock in the proportions that they were interested in the property.  It is significant that while Clark contends he was entitled to receive all of the company's stock for the mill and the Thayer contract, one-fifth of this stock was issued to McCullough in strict accordance with his contention as to what the arrangement was, that is, that their respective interests should be evidenced by the issuance of stock in the corporation.  Clark now contends that McCullough owes him for this stock, but he  does not undertake to explain how it ever happened to be issued to McCullough originally.  The other eighty per cent. of the stock was put at Clark's disposal.  Seventy-six per cent. of it is now held by him, and four per cent. was acquired by another party from him, which four per cent. has since been acquired by McCullough. McCullough says that it is true that there was talk between him and Clark about cutting the timber on these tracts of land upon a stumpage basis.  He says that Clark advised him that he, Clark, had agreed to let some of the employes take stock in the corporation out of the four-fifths of the stock assigned to him, but that he did not want these employes to have the benefit of the timber purchases, and that he wanted to make an arrangement for the corporation to cut the timber upon a stumpage basis; that this arrangement would make no difference as between himself and McCullough, for the reason that McCullough had the same interest in the timber held in Clark's name that he would have in the corporation, the only effect of it being that Clark would be enabled to prevent the parties to whom he

had agreed to sell stock from getting into the company upon what is termed the "ground floor." McCullough says that Clark insisted that inasmuch as this arrangement would not affect McCullough's interest one way or the other, he should allow him to carry it out because of the effect it would have upon the arrangements he had theretofore made with some of the employes in regard to selling them stock; that when this arrangement was explained to these employes who had agreed to take stock, they all refused to take it, and that upon such refusal Clark agreed with him to abandon the arrangement and carry the whole propostion as they had originally intended, and that this was done. Clark contends, on the other hand, that the only interest which the Damascus Lumber Company has in the timber is the contract as shown by the minutes, that is, the right to cut it on the payment of certain stumpage prices. The oral evidence upon this proposition is conflicting. In order to support his contention Clark introduced in evidence certain books kept by him, or under his direction, in Philadelphia, by which he attempted to show that there was kept during all of the time an account with the Damascus Lumber Company showing the amounts of lumber cut of the various kinds, and the amount due by it to him upon the basis of the stumpage contract. From the evidence in the record we are justified in saying that this stumpage account is fictitious, and was fabricated after the institution of this suit. It was before the jury in the court below, and it is shown by the testimony of witnesses asked in regard to it that the various items are inserted in most instances at the foot of the pages, and that while this account purports to have been commenced in 1907, where it is indexed in the various books of Clark, it is below the index of other accounts commenced long afterward, except in a few instances where some other accounts are made to appear below this Damascus Lumber Company stumpage account in the books, but on reference to the book it appears from the testimony that these entries in the index below the Damascus Lumber Company stumpage account are purely fictitious, there being no such accounts in the books. While these books were introduced in evidence on the trial of the case before the jury, they are not brought to this court as part of

the record.   It appears that notice was given Clark's counsel sometime before the hearing here to produce these books upon this hearing, and the only reply that was made to this notice at the bar of the court was that the books had been taken to Philadelphia, for which reason they could not be produced for our examaintion.   We do not think their production would show anymore, perhaps, than the oral evidence in regard to them does show, and that is that this stumpage account was a fabrication from beginning to end, and was made up for the purpose of this case.

There is another significant thing in this connection, and that is that when the audit above referred to was made for the purpose of acsertaining Clark's standing with the Damascus Lumber Company, he charged that company with every cent paid out by him for the purchase of the mill, for the purchase of timber, for taxes paid upon timber, and for all expenses incurred by him in connection therewith.   It is a little hard for us to comprehend why the Damascus Lumber Company should be treated as owing him for the money advanced for the purchase of this timber, and for the money advanced by him for the purchase of the mill if, as he says, he still owns the timber and the lumber company never had any interest therein, and he received all of the capital stock of the company as the purchase price of the mill.   The effect of this is that the Damascus Lumber Company in this audit is made to pay every cent that was paid for the mill and Clark gets all of its capital stock for nothing.   It is likewise made to pay every cent paid out by him for the purchase of timber which he claims he still owns.   But he says in explanation of this that this audit was made up only for the purpose of a settlement between him and McCullough, and that inasmuch as their interests in the corporation were the same as their interests in the timber and the land, it was not necessary to separate the two transactions and make a settlement showing how he stood in relation to the standing timber, and what his standing was with the Damascus Lumber Company. This explanation would be plausible were it not for the fact that Clark's interest in the Damascus Lumber Company is not the same as he claims it to be in the timber and land.   He claims

in the timber and land to own a four-fifths interest, and Mc-
Cullough the other one-fifth, while in the Damascus Lumber
Company he owns seventy-six per cent., and McCullough twenty-
four per cent. It will thus be seen that the explanation made
by him for including all of the money paid out by him for the
purchase of land, and for the purchase of the mill, as a charge
against the Damascus Lumber Company in this account has no
real basis to stand upon. There is much evidence taken upon
this question, and after a careful review of it we are of opinion
that the jury was entirely justified in holding that this timber
and land was an asset of the Damascus Lumber Company at
the time of the alleged sale of Clark's stock therein to the
plaintiff.

Clark further contends that even though it be conceded that
he made the contract sued upon, and that the timber and lands
were assets of the Damascus Lumber Company, yet the ver-
dict is grossly excessive, for the reason that the jury evidently
included items as assets which were concededly not assets of
the Damascus Lumber Company, and failed to give him credits
to which he was entitled. The jury, under the instructions of
the court, in arriving at the damages to which plaintiff was
entitled, has ascertained the net assets of the Damascus Lumber
Company. These assets consisted of a large amount of timber
remaining uncut upon the land, of the land itself, of the mill,
of the amount due from the Thayer Company above referred
to, of the value of the contract under which the Damascus
Lumber Company was cutting the Thayer timber at its mill,
if this contract was of any value, and of various other items
of property. Some of the items allowed by the jury were
fixed by an answer to interrogatories propounded. As to other
items we are unable to say from the record what allowance was
made therefor by the jury, except that some allowance was
evidently made, because the amount of the verdict necessarily
includes something for these other items. The jury was asked in
an interrogatory if they allowed anything because of the thirty
million feet of standing timber on one tract of land, ten mil-
lion feet on another tract, four thousand cords of bark, and
the real estate, and in answer to this interrogatory stated that

for the thirty million feet of timber they allowed $180,000.00, for the ten million feet of timber, $20,000.00, for the four thousand cords of bark, $20,000.00, and for the real estate, $20,-000.00. There is some contention that these figures are excessive. That there was thirty million feet of timber standing on one tract of land which was particularly fine timber, Clark concedes, but he says that this timber was not worth six dollars a thousand on the stump in 1915, at the time of the alleged sale. He swears, however, in his testimony that when the alleged stumpage contract was made in the fall of 1907, the price of six dollars per thousand feet for such timber as this was a fair price, and it appears from the record that prices were worse depressed in the fall of 1907 than they ever have been since that date, so that we may fairly conclude that even on Clark's own statement the jury would have been justified in fixing the value of this timber at $180,000.00. A number of other witnesses, who have gone over this timber very carefully, testify that it is worth the price found by the jury. As to the ten million feet of timber standing on the other lands, it was not so valuable because of the character of the timber itself and the difficulty in gettng it to market. Clark admits that two dollars per thousand feet for this was a fair price, but denies that there was as much as ten million feet of it. The evidence, however, shows that the operations of this company have been carried on since the first of May, 1915, and that there has been cut of this timber more than ten million feet. He disputes the item of four thousand cords of bark, contending that this was included in the price of the timber. It is true one witness does include this in the estimate given by him of the timber, but when he does this he makes the estimate somewhat higher than the other witnesses. The other witnesses do not include it in their estimates of the timber, but estimate for it separately, and the jury were entirely justified in finding the amount they did on that account. The item of twenty thousand dollars for the real estate Clark admits to be very much less than the actual value of it. In addition to these items of assets upon which there was a specific finding by the jury in answer to interrogatories, there was a large quantity of sawed lumber on hand. There is not much dispute as

to the value of this lumber. It is placed by a number of the witnesses at from thirty-five to thirty-six thousand dollars. As to what the jury allowed for it we cannot say, but certainly upon the undisputed evidence somewhere near these figures. It is put in the plaintiff's account filed with his declaration at $36,686.83, and this is based upon an inventory taken from the books of the company. We think it may well be assumed that ·the jury figured it at this amount. There is some dispute as to the value of the mill, of the railroad, and various equipment, amounting to several thousand dollars. We are not able to determine from the general verdict what amount was allowed for these items.

There is an item included in the bill of particulars of forty-five thousand dollars, being the amount received from the Thayer Company upon a settlement made in December, 1915, which it is contended the jury must have allowed in toto, when in fact and in truth a part of this item accrued after May 1, 1915. It is admitted in the record by the plaintiff that only about $32,000.00 of this item was an asset of the Damascus Lumber Company on May 1, 1915, and we are not justified in assuming that the jury allowed more than that amount in arriving at its verdict. The defendant insists that the jury did allow more than this amount, for the reason that its finding is for the very amount which would be arrived at by including this item as $45,000.00 and excluding another item claimed by the plaintiff for the value of the contract to saw the Thayer lumber as an asset. The fact that these amounts correspond does not justify the assumption that the jury arrived at its verdict by including the item confessedly not an asset, and by excluding an item upon which proof had been introduced, which would entitle them to consider it as an asset of the company. This claim that the jury included this $13,000.00 of the Thayer settlement which accrued after the first of May, 1915, as an asset as of that date is based solely and only upon the assumption that because the verdict it found was the same in amount as would be reached by including it and excluding the other item, that they did so include it and exclude the other item. As to how the jury reached its verdict we cannot in-

quire so long as there is evidence in the case to justify the amount found.

The defendant insists that the court erred in permitting evidence to go to the jury for the purpose of establishing that the contract with the Thayer Company for the cutting of its timber at the Damascus Lumber Company's mill was an asset, for the reason that the value of this contract was too speculative and uncertain to permit the jury to find that it was in fact worth anything to the Damascus Lumber Company on the first day of May, 1915. The contract provided that the Damascus Lumber Company should cut at its mill for the Thayer Company that company's timber at a certain price per thousand feet, and should have in addition to this price what is denominated the offal, consisting of the slabs and other waste from the logs, which was by the Damascus Company·cut into building lath and sold by it. A number of witnesses testify that this contract consituted a valuable asset of the Damascus Lumber Company; that the Thayer Company had remaining to be cut on the first of May, 1915, under this contract at least 60,000,000 feet of lumber, and that the profit that would be derived to the Damascus Lumber Company from cutting this sixty million feet under the terms of the contract would be at least one dollar per thousand feet, or sixty thousand dollars in all.   On the other hand, Clark attempts to show that instead of this contract being an asset it was a liability; that because it must extend over a considerable period of time, and the cost of performing it, by the Damascus Lumber company, be uncertain, there could not be fixed any basis upon which to determine that it was of any value whatever. It must be borne in mind that any allowance of profits for the failure to perform a contract is more or less uncertain. What the future will bring forth no one can tell.   Undoubtedly when parties enter into a contract each expects to derive some benefit therefrom, and when it is shown by those familiar with the situation that under existing conditions, and such changes as may reasonably be contemplated, a substantial benefit would accrue by reason of the terms of the contract, the plaintiff is justified in submitting to the jury the question of the quantum of damages for a breach thereof.     8 R. C. L., title "Dam-

ages" § 62, etc.    We do not think there was any error in this
case in the court submitting to the jury the evidence upon the
value of this contract to the Damascus Lumber Company.    Of
course, it would be for the jury to determine from the evidence
what, if any value, it had.    In this case it is clear that the
jury did not allow all that the plaintiff claimed upon account
of it, but it cannot be said, as contended for by the defendant
in his argument on the allowance of the thirteen thousand dol-
lars of the Thayer settlement, that the jury did not make some .
allowance on account of this item.

There is complaint that the jury included as assets of Dam-
ascus Lumber Company an item of $2500.00 for a one-half in-
terest in Hemlock Extract Company. ' We do not know from
the general verdict whether this item was considered by the
jury or not, but assuming that it was, it. appears that the evi-
dence would justify such action.    The Damascus Lumber Com-
pany furnished to this Extract Company $15,000.00 worth of
bark for which it was to have a one-half interest in the plant.
This the plaintiff estimated at $2500.00 at the time he filed his
suit, but since that time the Extract Company has been wound
up and there was realized $8000.00, according to the evidence,
after the payment of all debts, which would make this interest
worth $4000.00 instead of $2500.00.    Clark says the amount
has not been paid, and if such is the case, no doubt it can be
obtained by application to the proper party.

Clark also claims that he advanced more money than the
audit shows, and calls attention to certain items which he
claims are not correct.    This audit was made by Clark's priv-
ate secretary and the Damascus Company's bookkeeper, and
was the result of six weeks of labor.    They had before them
not only the Damascus Company's books and papers, but also
Clark's books, records and papers.    For this reason it will be
presumed to be *prima facie* correct, and if Clark would im-
peach it he must do so by evidence that satisfies that it is not
correct.    As an example of his effort along this line he at-
tempts to say that he is not given credit for as much as he paid
for insurance on the company's property, and he bases his con-
tention simply upon an entry in his own books, while it appears
that this amount was ascertained by the auditors from the

party to whom the money was paid.    Clark introduced this party as a witness but did not attempt to show by him that he had paid more for insurance than the audit gave him credit for.    The other attempts he makes to impeach the audit are no better supported, and we think the jury was warranted in making the answer it did to an interrogatory that the audit was correct.

Another complaint which the defendant makes is that there was certain purchase money remaining unpaid for some of the timber which the jury did not consider.    There is nothing to warrant such a conclusion.    Of course, if Clark was a trustee holding this land and timber for Damascus Lumber Company, then any unpaid purchase money was a liability to be considered in determining the company's net assets.    In the statement filed by the plaintiff he placed the liabilities of the company at $20,000.00.    Aside from this unpaid purchase money these debts actually amounted to only eight or nine thousand dollars, so that there was a sufficient balance of this estimated indebtedness to take care of the unpaid purchase money.    These items are proven and we are not warranted in believing that the jury did not, in arriving at the net assets of the company, deduct the same from the gross assets as found by it.

The court instructed the jury that in arriving at the plaintiff's measure of recovery, if they found that he was entitled to recover, they should ascertain  the value of the defendant's stock in the Damascus Lumber Company as of the first day of May, 1915, the time at which it was to have been delivered under the contract sued upon, and after deducting therefrom the amount which the plaintiff was to pay  the defendant therefor, add interest on the remainder to the date of the verdict.    The defendant insists that it was erroneous to permit the jury to include in their verdict anything in the nature of interest, inasmuch as the claim was for unliquidated damages. This instruction is simply a direction to the jury as to the method to be used by it in liquidating these damages.    The amount to which the plaintiff is entitled had to be ascertained by the jury as of the time they rendered their verdict.    Manifestly to give him what the stock was worth, less the amount he was to pay therefor, three or four years before the date of the

verdict, would not be compensation. That would permit the defendant to have the full use of the property during all of the intervening time without making any compensation therefor. This question, however, is hardly an open one in this state. In the case of *Cresap* v. *Brown,* 82 W. Va. 468, we held that in ascertaining the damages to which one was entitled for the wrongful removal of timber, it was proper to find the value of the timber at the date of the removal and add interest thereon to the date of the judgment or decree as fixing the amount of damages to which the complaining party was entitled at that time. Likewise in *Pittsburgh & West Virginia Gas Co.* v. *Pentress Gas Co.,* 84 W. Va. 448, 100 S. E. 296, we held that where one was entitled to compensation for oil taken from his land, the measure of that compensation would be the value of the oil taken at the time it was so wrongfully taken, with interest on such amount to the date of the judgment or decree. These holdings are fully supported by the authorities. 4 Sutherland on Damages, §§ 1118-1132; 8 R. C. L., title "Damages" § 89, and authorities there cited; *Mullen* v. *Cook,* 69 W. Va. 456.

The action of the court in giving to the jury plaintiff's instruction No. 3 is also insisted upon as ground for reversal of this judgment. That instruction defines to the jury what is meant by the term preponderance of the evidence. It is as follows: "The Court instructs the jury that the requirement that the plaintiff must prove his case by a preponderance of the evidence has to do with the weight of evidence, and if after the jury considers all the evidence in the case, both the evidence for the plaintiff and the evidence for the defendant, including all circumstances as well as direct testimony, and from all this the jury believe that the evidence in favor of the plaintiff outweighs that of the defendant, even in the slightest degree, then this requirement as to the burden of proof on the plaintiff is fully met." The defendant does not contend that this instruction does not correctly define the term preponderance of the evidence, but his insistence is that it mislead the jury, inasmuch as some elements of the case were required to be proved by more than a preponderance of the evidence. He insists that the evidence to establish that he was holding the legal

title to the lands and timber as trustee for Damascus Lumber Company, the equitable owner thereof, must be full, clear and free from doubt, and the court so instructed the jury. This instruction does not purport to do more than to define to the jury what is meant by a preponderance of the evidence. This term was used by the court in instructing the jury in a number of instances, and we can see no objection to the court defining it, if it was thought necessary to tell the jury what he meant by the use of that term. It could not mislead the jury for the definition was carefully limited in its application, and extends no further than to the instances in which the thing required to be proved could be proved by a preponderance of the evidence. It is not a binding instruction as claimed by the defendant. It does not require the jury to find for the plaintiff if he has proved the elements of his case by a preponderance of the evidence. It only tells the jury that the term preponderance of the evidence as used by the court in instructing it means what it is defined to mean in this instruction.

The action of the court in giving to the jury plaintiff's instruction No. 6 is also insisted upon as error. This instruction is as follows: "The Court instructs the jury that if from the evidence in this case they find for the plaintiff, then in determining the assets of the Damascus Lumber Company they must consider all property owned by said Company; whether it had the legal title thereto or not; and in determining whether or not said Company owned the property, or any part thereof, standing in the name of the defendant, the jury must consider all the facts and circumstances in the case applicable thereto, and must take into consideration the manner in which said property was treated and handled by the parties, and by the way in which the accounts were kept in relation thereto, and the official position held by defendant in said Company, as well as the way, if any, said property was treated by the defendant in the making of the audit of his accounts, as well as all other facts and circumstances, and from all the evidence determine if said defendant held the legal title to said property for the use and benefit of said Company, and thus determine if said Company had the equitable right to said property, and the value of said equitable rights on May 1, 1915." The criticism made of this in-

struction is that it gives undue emphasis to a few facts, and calls special attention to the fact that Clark was an officer of the company without also calling attention to the fact that Mc-Cullough was likewise such officer. It will be noted from reading the instruction that the purpose of it was to aid the jury in determining the question of whether or not the property, the legal title to which was in Clark's name, was in fact the property of the Damascus Lumber Company, and should be treated as an asset of that company. This instruction invites the jury's attention, as it will be observed, to a number of circumstances, among them the manner in which the property was treated and handled by the parties, and the fact that Clark was an officer of the corporation by which it was so treated and handled. It tells the jury to consider all of the facts and circumstances in evidence upon this question. The fact that McCullough was also an officer of the corporation could have made very little difference in determining this question for the property was not in his name, but was in the name of Clark, while the fact that Clark was an officer of the corporation which treated this property as its own would be material as indicating that he considered it as belonging to the company. McCullough's action as an officer of the company might not be, or would not be effective to bind Clark unless had with Clark's knowledge and consent. We think the instruction fairly presented this phase of the case to the jury, and is not subject to the criticism made of it.

The action of the court in refusing to give to the jury defendant's instruction No. 11 is also assigned as error. This instruction would have told the jury that if they believed from the evidence that the minutes of the organization meetings of the Damascus Lumber Company, as read in evidence, are the minutes referred to in a subsequent minute by which the charter of the company was amended, which were offered in evidence by the plaintiff, then the plaintiff is estopped to deny the regularity or validity of such minutes and meetings, and cannot be heard to contradict the same. This instruction was not comprehensive enough even assuming that the propositions of law contained in it are correct. It eliminates entirely from consideration the theory of McCullough that the contract at-

tempted to be made by these minutes was never in fact carried out by the parties, but was entirely abandoned. There can be no doubt but that by mutual agreement of the parties, even though we consider that the minutes constitute a contract, the same could be abandoned and the parties carry on their operations upon an entirely different basis, and this was the real question which the jury had to determine. The giving of this instruction could have served no other purpose than to have misled the jury into the belief that if the minutes that were made at the Pittsburgh meeting constituted a contract not even the parties themselves could change it.

The refusal to give to the jury defendant's instruction No. 9 as presented, and in modifying it and giving it to the jury as modified, is also assigned as error. This instruction would have told the jury that in ascertaining the assets of the Damascus Lumber Company, if they believed from the evidence that the T. W. Thayer contract was a source of loss to the company instead of profit, they should deduct such loss from the assets. The court modified this instruction so as to tell the jury that if they found this contract to be a source of loss as of the first day of May, 1915, the date of the alleged contract, then they should deduct such loss from the assets. Clearly this modification was right. The jury in fixing the damages to which the plaintiff was entitled were compelled, so far as they could, to put themselves in the position of the parties on the first day of May, 1915, and if upon that day this Thayer contract was a liability rather than an asset, of course they should have so treated it. The instruction without this modification was indefinite in that it did not give to the jury a certain time at which they were to fix the effect of this contract upon the Damascus Lumber Company.

Another assignment of error is based upon an alleged abuse by counsel for the plaintiff of the privileges of argument in his closing address to the jury. We cannot even consider under the showing in this record the alleged abuse of privilege relied upon. It appears from the bill of exceptions that counsel for the plaintiff when making his argument to the jury was interrupted by defendant's counsel with the request that certain remarks be taken down, to which demand or request plain-

tiff's counsel acceded.     Whether the remarks were taken down
at the time or not does not appear, nor does it appear that the
defendant or his counsel made any objection at the time to
the court that the remarks complained of were improper, or
asked the court to make any ruling in regard thereto, but after
the jury had returned its verdict assigned as one of the reasons
for setting it aside the alleged improper remarks.     We have re-
peatedly held that this court will not consider errors predicated
upon the abuse of counsel of the privilege of argument unless
it appears that the complaining party asked for and was refused
an instruction to the jury to the effect that such remarks were
improper and should be disregarded.     *State* v. *Statler,* 86 W.
Va. 425, 103 S. E. 345, and authorities there cited.     In order
to take advantage of a matter of this kind the complaining party
must ask the court for a ruling thereon at a time at which the
trial court could correct the alleged error, and not wait until
after the jury has returned a verdict and the court is without the
opportunity to correct any error, if error there be.

Other errors assigned are to the action of the court in ad-
mitting certain evidence offered by the plaintiff over the de-
fendant's objection, and in rejecting certain evidence offered
by the defendant.     Counsel for the defendant, while in their
brief insisting that they rely upon these errors, do not advance
any reason for disturbing the verdict because thereof.     Evi-
dently in the preparation of their brief they considered them
of such an inconsequential character as to be unworthy of ser-
ious presentation by way of argument.     We have carefully ex-
amined them, and we quite agree with this conclusion.

We find no error in the judgment complained of, and the
same is affirmed.

*Affirmed.*