# CHARLESTON.

## STATE v. OSCEOLA A. STATLER.

Submitted April 20, 1920.     Decided May 11, 1920.

1. CRIMINAL LAW.—*Verdict Having Substantial Support in Con-
   flicting Evidence not Set Aside.*

   The verdict of a jury in a criminal case which finds sub-
   stantial support in the evidence, even though the same may
   be highly conflicting, will not be set aside by this Court (p. 426).

2. SAME—*Abuse of Privilege of Arugment not Considered Unless
   Complaining Party Was Refused an Instruction to Disregard*

   This Court will not consider errors predicated upon the abuse
   of counsel of the privilege of argument, unless it appears that
   the complaining party asked for and was refused an instruc-
   tion to the jury to disregard the improper statements (p. 432).

   (LYNCH, JUDGE, absent).

Error to Circuit Court, Ohio County.

Osceola A. Statler was convicted before a justice of the peace
of exceeding the speed limit in Ohio county, and on his appeal
to the criminal court of that county and a trial before a jury was
found guilty, which judgment was affirmed on error to the cir-
cuit court, and he brings error.

*Affirmed.*

*J. Bernard Handlin* and *G. Alan Garden,* for plaintiff in
error.

*E. T. England,* attorney general, *Henry A. Nolte,* assistant
attorney general, *D. A. McKee,* prosecuting attorney, and *Carl
G. Bachman,* assistant prosecuting attorney, for the state.

RITZ, JUDGE:

The defendant was tried before a justice of the peace of Ohio
county upon a warrant charging him with exceeding the speed
limit of thirty-five miles an hour while driving an automobile
over one of the public roads of that county, which trial resulted
in his conviction before said justice of the peace, from which
judgment he appealed to the Criminal Court of said county. Up-
on a trial in that court before a jury he was found guilty, and a
judgment of fine and imprisonment rendered against him which,

upon a writ of error to the Circuit Court of Ohio county, was affirmed. He now prosecutes this writ of error for the purpose of reviewing the judgment of conviction against him.

The errors assigned are based upon the action of the court in the admission and rejection of certain evidence; upon the remarks of the prosecuting attorney in his closing argument; and upon the refusal of the court below to set aside the verdict of the jury as not being supported by the evidence. It appears that on the occasion upon which it is charged that Statler violated the law he was returning to the City of Wheeling in his automobile. It seems that there is a considerable down grade at the point where it is charged he exceeded the speed limit. When he started down this grade there was an automobile in front of him going in the same direction, and also one coming in the opposite direction. The one going in the same direction in which he was going was running at a very low rate of speed, and Statler turned to his left for the purpose of passing this car. The car coming in the opposite direction was only a short distance beyond and, as he says, finding that he would likely not be able to turn back into the road ahead of the car coming in the opposite direction to that in which he was running, he attempted to run around it on the wrong side, and in doing this ran his own car clear off the paved road. He did not succeed, however, in clearing the opposite car, but ran into the right front end of it, and did some damage. He then observed that his car, if allowed to proceed, would run into a telegraph pole, and in order to avoid this he suddenly turned it back into the road again, with the result that it was overturned. The car which was running in the same direction as the Statler car was operated by a man by the name of Vossler, and the car running in the opposite direction, and with which Statler had the collision, was operated by a man by the name of Wallace. Vossler testifies that he was running along on the proper side of the road at a speed of about ten miles an hour when he heard the Statler car coming over the top of the hill, which was something like one hundred and fifty feet behind him. He says that from the noise it was making he came to the conclusion that it was running at a dangerous rate of speed, and immediately turned his car out of the paved road to prevent a collision, and that just as he did so the Statler car

dashed by and ran into the Wallace car just a short distance in front of him. He gives his opinion that Statler was running at the time he came over the hill and started down it at a speed of from fifty to sixty miles an hour, but he bases this largely upon the noise which the car was making. He says that at the time the car came into his view and passed him and ran into the Wallace car it was making at least twenty-five miles an hour, but that the speed in his judgment had been reduced. Wallace testifies that he saw the Statler car coming over the hill. The night was dark, but he saw the lights, and it was coming at a very rapid rate. In his judgment Statler was running at from thirty-five to forty miles an hour. Another witness, Beary, testifies that Statler passed him some distance beyond this accident, coming up what is called Chicken Neck hill. He and Statler agree about this. He says that the Statler car passed him when he was going around a certain curve just before reaching the top of the Chicken Neck hill, which point is shown to be about two hundred feet from a house at the top of the hill; that at the time Statler passed him he, Beary, was running about fifteen or twenty miles an hour; that when he got to the top of the hill, at the house above referred to, he looked ahead and saw the Statler car going over the top of the Altenheim hill, which is shown to be about eight hundred feet from the point which Beary had then reached; and it is argued from this that Statler, having travelled the two hundred feet up the hill and the eight hundred feet between the top of the Chicken Neck hill and the top of the Altenheim hill during the time that Beary was travelling only two hundred feet, was going at a very rapid rate of speed. If Beary's speed was fifteen miles an hour, and Statler covered the same two hundred feet that Beary did and eight hundred feet more in the same time that Beary covered two hundred feet, it would indicate that he was running five times as fast as Beary, or seventy-five miles an hour. Beary, however, testifies that proceeding up the hill his car lost speed, and he did not know at what speed he was running when he reached the top of the hill; that it may have been no more than seven miles an hour; but assuming this to be true, and that he was running fifteen miles an hour when Statler passed him, and that the reduction in speed was uniform from that point until he reached the top of the hill,

the average speed made by him over this two hundred feet would
be eleven miles an hour, and if Statler traveled five times the
distance he was necessarily going at a speed of fifty-five miles an
hour. There is other evidence showing that the road, for a dis-
tance of one hundred feet or more from the point at which the
Statler car ran into the Wallace car indicated that the
wheels of the Statler car had been dragged over it from the fact
that there was burnt rubber and pieces of tire scaled off from
the sliding, which would show, as is argued, that the speed of the
Statler car had been considerably reduced before the actual col-
lision occurred. Statler, on the other hand, says that he was not
exceeding twenty-five or twenty-seven miles an hour at any time,
and that he could not reduce his speed because the road was
slick; that when he put on his brakes his wheels slid on the slick
road, and the speed was accelerated rather than reduced. Much
evidence is introduced to show that it was impossible for Vossler
to form any idea of the speed of the Statler car from the
sound that it was making, and also to show that it was impossible
for Wallace to have anything like a correct idea of its speed from
observing the lights as it approached him. It must be borne in
mind, however, that the estimates of these witnesses as to the
speed was based, not only upon the sound the car was making
and their view of it, but as well the distance it travelled from
the time it came over the top of the hill until it hit the Wallace
car, and the time consumed in travelling that distance. All of
these elements necessarily entered into their estimates. Vossler
is reasonably positive that the Statler car was going at least
twenty-five miles an hour when the collision occurred, and that
it was going at a much more rapid rate just before that time;
that its speed was reduced by reason of the brakes having been
applied, which is shown from the fact that the wheels had slid
for something like a hundred feet. That the road was slick on
this occasion appears reasonably certain, and this may to some
extent account for the accident, but the guilt or innocence of
Statler does not depend on the fact that he had a collision, or
the cause of it. He would be just as guilty if he exceeded the
speed of thirty-five miles an hour if he had had no accident.
We are asked upon this review to hold that the evidence offered
by the state, in view of the explanations made by experts that

were introduced, was not sufficient to justify a finding of guilty. It may be that the testimony of Vossler who heard the car approaching from behind and saw it dash by him, of itself, would be insufficient, and it may likewise be that the testimony of Wallace with whose car Statler had the collision would be insufficient, but when we take the testimony of these two witnesses, together with the testimony of Beary, whose car Statler passed coming up the Chicken Neck hill, and the other testimony showing that the brakes had been applied to the Statler car and the wheels had been sliding for some hundred feet before it ran into the Wallace car, we are unable to say as matter of law that the jury were not justified in finding that Statler was running more than thirty-five miles an hour when he started down the hill. The weight to be given to the testimony of the witnesses was peculiarly for the jury, and it must be borne in mind that Statler himself admits that he was running at a speed dangerously close to the speed limit.

· The defendant objected to the witness Vossler being allowed to give his idea of the speed of the Statler car when coming down the hill behind him judging from the noise it was making. When we read the whole evidence of Vossler we find that his judgment of the speed, was based on all of the things which came within his view on that occasion, not only the noise which the car made in descending after it came over the hill, but upon the fact that it covered the distance from the top of the hill to the Wallace car in a very short time. The fact that it was running, as he says, at least twenty-five miles an hour when it passed his car, and that the speed had been reduced, as he contends, by the wheels being locked before that time, justified his conclusion that Statler was running at a very much higher rate of speed than the law allows. We cannot say as matter of law that the court erred in allowing his opinion to be given in evidence based upon the opportunity he had of forming the same at the time.

Exception is taken to the action of the court in permitting the witness Wallace, upon redirect examination, to answer a leading question. The prosecuting attorney, after he had been cross-examined, asked him if his estimate of the speed of thirty-five · or forty miles was his best judgment, to which he replied that

that was his opinion; and in answer to a question from the prosecuting attorney as to whether or not it was his honest opinion, he replied that it was. The objection to these questions and answers is that they are leading and suggestive. While they are, perhaps, subject to that objection, it does not appear that the court abused its discretion in permitting them to be answered. The witness Wallace had testified upon this question, and there is no indication from his testimony that he was a witness of that character whose testimony would be influenced by any suggestion which the question might contain.

Exception is also taken to the action of the court in permitting the witness McClusky to testify concerning a rut or indentation made in the bank where the Statler car ran into it in going around the Wallace car, it being asserted that he was permitted to testify as to whether or not this indentation was the result of speed, force or weight. The answer of the witness declares that he was unable to give an opinion upon this question, so that there was nothing to the prejudice of the defendant in that answer.

Exception is also taken to the action of the court in permitting witnesses to testify that certain marks on the road were made by the application of the brakes to the wheels, and the same being slid over the asphalt road, it being urged that there is nothing to show that the same sort of marks would not be made by a car running slowly as by a car running rapidly down the hill. This may be entirely true, but this evidence was introduced for the purpose of showing that if the car was running at the rate of twenty-five miles an hour when it hit the Wallace car, it must have been running at a very much more rapid rate a short time before that, because of the fact that the car was running with the wheels locked for a distance of one hundred and fifty feet. It is true Statler and other experts explained to the jury that the brakes being applied and the wheels being locked would not necessarily reduce the speed. The evidence upon this question all went to the jury, and it was for them to say what might be the possible result.

It is also objected that the witness Logomarcino was permitted to testify to a conversation he had with the defendant a short

time after the accident.   It appears that this witness was a deputy sheriff and informed Statler that he would have to arrest him for speeding, upon which the witness says Statler told him he wanted to fix the matter up, and upon being informed that he, the witness, would not adjust the matter, asked him if he could not go before a justice of the peace and fix it up.   It is insisted that this evidence was improper for the reason that it did not in any degree indicate that Statler believed he was guilty of exceeding the speed limit of thirty-five miles an hour.   His efforts to fix up the charge with the officer indicated that he felt that he had been guilty of violating the law.   He claims that he thought the speed limit was fifteen miles an hour, and it was upon this asumption that he was wanting to fix the matter up, not knowing that thirty-five miles was the maximum speed allowed.   Every person is presumed to know the law, and the jury were entitled to consider this presumption of knowledge of the law together with Statler's explanation of his conversation with this witness, and if they believed his explanation then his statements to the witness would have no force.   If, on the other hand, his statements were not sufficient to overcome the presumption, the jury would give to the declaration such weight as they believed from the circumstances it was entitled to.   Other exceptions were taken to the admission and rejection of certain evidence offered by experts.   Some of the evidence admitted in answer to questions of the prosecuting attorney on cross-examination would have been improper as independent evidence, but it is clear from the record that the questions asked were simply to clear up evidence given by the witnesses upon their examination by the defendant's counsel, and in explanation of answers made upon such examination.   The court refused to allow some of these experts to answer questions propounded by defendant's counsel upon redirect examination, presumably upon the theory that the inquiries sought to be made had already been fully covered, and we think from a perusal of the evidence he was justified.   Every possible phase of the operation of the car, under not only the circumstances existing at that time, but in almost every other situation which counsel could imagine, was submitted to these witnesses on their direct examination, and it was not error for the court to refuse

to allow counsel again to go over the same hypothetical states of fact in the examination of the witnesses.

Another error which is confidently insisted upon is that the prosecuting attorney made improper remarks in his closing argument to the jury. It is insisted that the remarks of the prosecuting attorney in regard to the defendant being on a joy ride on this occasion were improper. Apparently these remarks were made in answer to a challenge of defendant's counsel in his argument, the prosecuting attorney asserting in his remarks that but for that fact he would not make the statement which he was about to make, and that was that after the collision between the Statler car and the Wallace car Mr. Vossler ran to the point of collision and there found a woman lying in the road, whom he picked up and placed upon the bank. Counsel for the defendant insisted that this was improper inasmuch as it was not shown that this woman was in the Statler car at the time of the collision, and the prosecuting attorney remarked that the jury could say from the evidence what the facts were in that regard, and upon the court being requested to pass upon this matter he stated from the bench that that was the evidence given by the witness Vossler, and in this it appears that he was correct. While this argument had nothing to do with the merits of the controversy, it seems to have been provoked by counsel for the defense, and it was no unreasonable deduction from the evidence of Vossler to the conclusion reached by the prosecuting attorney that Statler was on a joy ride on the occasion referred to. We do not think in view of the circumstances under which the remark was made that we would be justified in setting aside the verdict of the jury.

Other remarks made by the prosecuting attorney in his closing argument are complained of, being to the effect that the rule of reasonable doubt was an agency of the devil devised for the purpose of allowing the guilty to escape punishment; charging that the defendant had attempted to bribe an officer after he had been arrested; and also informing the jury that he had been convicted before a justice of the peace upon this charge, and had appealed his case. These remarks and others referred to were improper, and should not have been indulged in by the prosecuting attor-

ney. However, in the heat of criminal trials counsel oftentimes are led into the use of remarks which they would not for a moment think of making in their calmer moments. It appears that when these remarks were made the defendant's counsel excepted to them, but it does not appear that he made any motion directed to the court to instruct the jury to disregard them, or to require the prosecuting attorney to desist. The practice in regard to the proper way to take advantage of improper argument differs materially in different jurisdictions. In some jurisdictions it is held that merely indicating an exception to such remarks is sufficient to call the court's attention to them, and require a ruling thereon by the court. Trial courts cannot always give to arguments of counsel that close attention which would be necessary in order to prevent any improper argument, and it would be manifestly unfair to allow defendant's counsel to sit by silently when such remarks are being made, and then after an adverse verdict is rendered make the same ground for a motion for a new trial. In this jurisdiction it is well established that in order to authorize this Court to reverse for errors predicated upon the abuse of counsel of the privilege of argument it must be made to appear that the complaining party asked for and was refused an instruction to the jury to disregard the unauthorized and improper statements of the opposite counsel. *Landers* v. *R. R. Co.,* 46 W. Va., 492; *State* v. *Johnson & Devinney,* 49 W. Va. 684-694; *State* v. *Clifford,* 58 W. Va. 681; *State* v. *Barrick,* 60 W. Va. 576-582; *Given* v. *Diamond Shoe & Garment Co.,* 84 W. Va. 630, 101 S. E. 153. This was not done by defendant's counsel in this case.

. It follows from what we have said that there is no error in the judgment complained of, and the same is affirmed.

*Affirmed.*