# CHARLESTON.

L. C. MUSGRAVE v. KNIGHTS OF THE KU KLUX KLAN, a Corp.

(No. 5698)

Submitted October 5, 1926.   Decided October 12, 1926.

1.  NEW TRIAL—On Motion to Set Aside Verdict, Evidence of Pre-
    vailing Party Will be Most Favorably Considered, and All
    Conflicting Testimony and All Reasonable Inferences from
    Evidence Will be Resolved in His Favor.

    On motion to set aside the verdict of a jury, the evidence
    of the prevailing party will be most favorably considered, and
    all conflicting testimony and all reasonable inferences from
    the evidence, will be resolved in his favor.   (p. 324.)

    (Appeal and Error, 4 C. J. § 2719.)

2.  FRAUDS, STATUTE OF—Direct Promise to Further Some In-
    terest of Promisor is Original, and Not Within Statute,
    Though Its Effect is Also to Promote Interest of Another.

    Where the direct object of the promisor is to further or
    promote some interest of his own, the promise is original and
    not within the statute of frauds, although the effect of the
    promise is also to promote the interest of another.   (p. 324.)

    (Frauds, Statute of, 27 C. J. § 21.)

    (NOTE:  Parenthetical references by Editors, C. J.—Cyc. Not
    part of Syllabi.)

Error to Circuit Court, Marion County.

Action by L. C. Musgrave against the Knights of the Ku
Klux Klan.  Judgment for plaintiff, and defendant brings
error.

                                        Affirmed.


William H. Sawyers, William F. Zumbrunn, John H. Con-
naughton and W. B. Brown for plaintiff in error.

J. J. P. O'Brien, E. C. Frame and John W. Mason, Jr., for
defendant in error.


HATCHER, JUDGE:

This case is here on error from a judgment of the circuit
court of Marion county, awarding the plaintiff $4500.00.

In September of 1924, several members of the Ku Klux Klan were arrested under a charge of conspiracy and assault. One of those arrested was E. O. Jones, who was the official head of the Klan in that county. Jones sent the plaintiff, L. C. Musgrave, to Washington for the purpose of obtaining assistance from the national organization. Plaintiff was accompanied by T. O. Meredith, the local secretary of the order. In Washington the two conferred with Paul Etheridge, who was general counsel, and a member of the supreme executive committee, of the Klan. They told Etheridge ''that the members of the Ku Klux Klan were in trouble in Marion county on account of being members of that organization, and that the boys would not have been in trouble if it had not been for the organization, and that the fight was against the organization and not against the boys.'' According to the testimony of both plaintiff and Meredith, Etheridge then employed plaintiff to represent the interests of the Klan in Marion county, and agreed to pay him $300.00 for defending each member of the Klan who should be indicted.

Shortly after the conference, fifteen Klansmen were indicted. There were several counts in the indictment. The fifteen were charged with conspiracy in one count under the name of the Klan, in another under the name of the Ku Klux Klan, in another under the name of Klansmen, and in another under the name of the Knights of the Ku Klux Klan. The plaintiff acted as counsel for the indicted Klansmen.

Etheridge denied having authority from the Klan to employ local counsel. He also denied employing plaintiff, and stated that he referred him to W. H. Sawyers', who was the chief executive of the Klan in West Virginia. His testimony as to the conference was supported by a witness named Braselton, who was present. Etheridge quoted from memory a telegram he received from Musgrave after the conference, as follows: ''Fifteen men indicted. No word from Sawyers yet. What must I do?''

The plaintiff admitted sending Etheridge a telegram, but did not recall the exact words. He gave the following explanation: "My recollection is that I was to wire him how many indictments were returned, and he would then wire me back of what procedure to take as to bonds and various things like that. The bonds had been very heavy, and we were about out of bonds. That is as near as I remember it now." He reiterated that his employment was definitely arranged at the conference in Washington, and did not depend on further notification from Etheridge.

A copy of the by-laws of the Klan was admitted in evidence, two sections of which are: "Section 1. Being the Supreme Chief Executive of this order, the Imperial Wizard shall have and hold supreme authority and power within this constitution in all administrative matters, and to act in any and all matters not prescribed in this Constitution, when in his judgment the best interests of this Order warrant. He may delegate such authority to his subordinate executives or administrative officers as he may deem necessary, but the Imperial Authority of this Order shall ever center and be vested in him and shall not be divided." and "Section 13. Whenever a question of paramount importance to the interest, well-being or prosperity of this Order arises, not provided for in this Constitution, he shall have full power and authority to determine such question, and his decision, which he shall report to the Imperial Klonvocation, if requested, shall be final."

Another document was introduced by plaintiff, showing that the Imperial Wizard had delegated to Etheridge the following authority: "Mr. Paul S. Etheridge, Imperial Klonsel for the Knights of the Ku Klux Klan, Inc., is hereby appointed Chief of Staff and given express authority to act for me in all matters requiring my attention, and to give direction thereto the same as though I were present." This power had been given Etheridge prior to the conference with plaintiff and was still effective at that time.

Whether or not plaintiff was employed by Etheridge was a matter of fact, to be passed on by the jury. The jury ac-

cepted plaintiff's explanation of the telegram to Etheridge, and found in favor of plaintiff as to the employment. The verdict of the jury accords with the terms of employment as testified to by plaintiff and Meredith. Therefore the verdict will not be disturbed as contrary to the evidence. "An issue of fact involved in conflicting oral evidence and dependent upon the credibility of the witnesses, lies clearly within the province of the jury for determination." *Nesben* v. *Jackson,* 89 W. Va. 470; *City of Charleston* v. *DeHainaut,* 95 W. Va. 202.

The defendant offered in evidence an abstract statement of the principles of the Klan, together with several sections of its constitution. The plaintiff objected to the introduction of this evidence, and the court sustained the objection. The defendant excepted to the ruling of the court at the time, and now contends that the rejection of this evidence was error. The defendant, however, failed to take a specific bill of exceptions to this ruling of the court, and failed to direct the attention of the trial court particularly to this alleged error in its motion for a new trial. Consequently, under the decisions of this court, this alleged error is deemed to have been waived, and will not now be considered. *McDermit* v. *Forbes,* 69 W. Va. 268; *Hill* v. *Norton,* 74 W. Va. 428; *State* v. *Noble,* 96 W. Va. 432; *Clark* v. *Kelly,* 101 W. Va. 650, 133 S. E. 365.

The defendant also claims that the Klan was no more interested in the result of the trial of the fifteen than were the Masons, the Odd Fellows, or the local churches to which the accused belonged, and that the employment of plaintiff was ultra vires. The defendant overlooks the facts that the indictment did not charge the fifteen with conspiring as Masons or Odd Fellows or churchmen, but as Klansmen, and that so far as the evidence shows no attack was being made on any of the above organizations through these men, but according to the evidence of plaintiff, the prosecution of the fifteen was an attack on the defendant.

The Imperial Wizard was given the right with full authority to determine any question of paramount importance

to the interest, well-being or prosperity of the Klan. An attack on the order, whether warranted or not, certainly affected its interest. This was admitted by Etheridge on cross-examination. The right to act in such case had been regularly transferred by the Wizard to Etheridge. There is nothing ambiguous about the by-laws of the Klan, or the instrument delegating authority to Etheridge. By virtue of these documents, Etheridge had ample authority to employ plaintiff. The instructions for plaintiff properly present the above theory, and are therefore without error. The defendant's instructions, as well as its interrogatories, were prepared on the theory that only the supreme executive council of the Klan had authority to employ or direct the employment of local counsel, and were properly refused.

The defendant finally contends that even if Etheridge had the authority to employ, and did employ plaintiff, the contract was to answer for the debts of others, is within the statute of frauds and therefore not enforcible. This argument utterly overlooks the testimony of plaintiff. Referring to Etheridge, plaintiff said: ''He then told me he would employ me on behalf of the national organization, to come back to Fairmont, represent the boys and look after the interests of the Ku Klux Klan.'' Plaintiff also testified that he was never employed by any of the fifteen to represent them at the trial. The jury having found in favor of plaintiff, his statements must be given full credence. *Gwynn* v. *Schwartz,* 32 W. Va. 487; *Estep* v. *Price,* 93 W. Va. 81. From these statements it appears that plaintiff had no other promise for any one to which that of Etheridge was collateral; that no one but the defendant is liable to him for his services to the fifteen Klansmen; that the promise of Etheridge was strictly an original promise to pay for a defense of the order and not a promise to pay the debts of its members; that defense of the fifteen was a defense of the Klan, and that a fee of $300.00 for each Klansman indicted, was simply the measure of the service plaintiff was rendering the Klan. If the engagement of plaintiff was primarily to promote the interests of the Klan, the fact that his employment

also benefited the fifteen indicted Klansmen, does not bring it within the statute of frauds. 27 C. J. 130-2.

We observe no error in the trial of this case prejudicial to defendant. The judgment of the lower court is therefore affirmed.

*Affirmed.*