STATE OF WEST VIRGINIA *v.* NORMAN FILES

(No. 9309)

Submitted September 9, 1942.. Decided December 15, 1942.

*A. C. McIntire,* for plaintiff in error.

*William S. Wysong,* Attorney General, and *Kenneth E. Hines,* Assistant Attorney General, for defendant in error.

RILEY, JUDGE:

Norman Files was sentenced to ten years imprisonment in the state penitentiary by the Circuit Court of Berkeley County by an order based upon a verdict of guilty of malicious wounding of one Alston Hutsler. This writ of error is prosecuted to that judgment.

The accused, at the time of the occurrence described in the testimony herein, lived in Berkeley County west of Glengary near the Virginia line. One Mrs. Shade, his housekeeper, and his seventeen-year old son lived with him. Files was employed on a housing project and Mrs. Shade at the Dunn Woolen Mills, both in Martinsburg. It was their habit to leave the house around six-thirty in the morning to drive to work in Files' automobile, and return together in the afternoon between three-thirty and four-thirty.

Hutsler was employed by the Work Projects Administration and lived upon a farm adjoining on the west that of Allen Tyson, the supervisor of the work in which he was engaged. Files' dwelling place was located upon the same highway as were those of Tyson and Hutsler, but still farther west, all within a few miles of Glengary. Neither Tyson nor Hutsler seems to have known Files.

On the afternoon of February 1, 1941, Hutsler and Tyson were returning from work in the latter's car. They stopped in Glengary at the general store of W. R. Graham, in which the postoffice was located, for the purpose of getting their mail and making some small purchases. Files, with Mrs. Shade in the car, had also stopped at the Graham store, and was at the gasoline tank when Hutsler and Tyson left. Hutsler, referring to Files, asked Tyson who the "big fellow" was. They then drove west until they reached the lane leading to the Tyson house, which ran north from the highway, and into which Tyson turned after Hutsler had gotten out of his car for the purpose of walking home from that point, a distance of perhaps one-half a mile. Files evidently had left Glengary shortly after they had. He reached the end of the Tyson lane immediately before Tyson left his car to open a gate

which crossed his lane a little less than a hundred yards north of the highway. From this point there are detailed contradictions in the testimony which, in view of the verdict, will be dealt with by us upon the theory of the State.

When Hutsler got out of the Tyson car, he started toward his home. Before he had gone more than a few yards Files drove up, stopped, and at once began profanely berating Hutsler for not keeping his beagle, which admittedly had chased rabbits throughout the general neighborhood, off Files' place. Hutsler was quite willing to discuss the matter in a friendly way and attempted to do so. Instead of responding, Files removed his overcoat, picked up a bumper jack near his feet, got out of his car on the left, walked rapidly around the back of the car, and, with the declaration that he had been waiting to get Hutsler "for a long time", struck him on the head with the jack, knocking him down. After the first blow, Files struck Hutsler, who was lying on the ground, once or twice more with the jack, according to the testimony of Tyson and that of one Charles Bailey, who drove past and stopped a few seconds before the assault occurred.

The version of the affray testified to by Files and Mrs. Shade conflicts quite materially with that of the State's witnesses. They both say that when Files stopped his car near the end of the lane, Hutsler was standing near the center of the highway, and that Files asked Mrs. Shade to open the window on her side of the car, which she did; that Files then asked Hutsler if he wouldn't try to keep the beagle at home, and Hutsler replied truculently, taking a long-bladed pocket-knife from his pocket, opening it, and starting toward the Files car. Files had stopped the engine, and rather than to attempt to start it and risk running over Hutsler, got out of the car, went to the trunk at the back of the car, opened its two catches, got the jack, and, after Hutsler had attempted several times to cut him with the knife, struck Hutsler once with the jack, after which the latter dropped the knife and Files, seeing him do so, threw down the jack, offering to fight fairly.

· The first assignment of error is based upon the refusal of the trial court to grant a continuance. On February 19, 1941, the case was set for trial on the 11th day of March following. On March 5, the attorney who had represented the accused in the preliminary hearing retired from the case, because no satisfactory arrangement had been made for his. compensation; and the attorney who represented Files from that time on was employed on March 6. Defendant at that time had had no witnesses summoned in his behalf, and when the attorney who represented him at the trial was so informed, he at once had subpoenas issued. Partially due to weather conditions, several of the witnesses for whom subpoenas had been issued were not found, a few were served on the day of the trial, and two were nonresidents of the State. We have considered carefully the foregoing · as grounds assigned by the accused as constituting prejudicial error in declining to grant his motion, and, considering the extremely doubtful fact that a satisfactory showing was made of the materiality of the testimony of the absent witnesses and the necessity for their attendance in order to prove those facts, we are of the opinion that the result of the trial cannot justifiably be charged to the trial court's refusal to continue or re-set the case. On February 19, when the case was set for trial, the accused was fully informed as to its seriousness, and should have known that if he was unable to employ an attorney, the trial judge would assign him competent counsel without charge. The witnesses who would testify to the actual assault or to the circumstances immediately preceding it were placed on the stand, and upon the record it does not appear that the accused was prejudiced in any manner by the time of the trial. However, we think this record clearly shows that any consequence of the court's refusal to grant accused's motion to continue is properly chargeable to his own dereliction.

In order to establish the vindictiveness and malice of the accused behind the perpetration of the assault, the State was permitted to introduce the testimony of several witnesses that they heard Files on an occasion in early January state that it was his purpose to "get" the

Hutslers and the Tysons if it "cost" him twenty years. Defendant's counsel stress that the declaration of purpose was not focused upon Alston Hutsler, the prosecuting witness, and hence was irrelevant. Counsel did not contend that the declaration was too remote in point of time. We think that a malicious intention against a class to which the person assaulted by the accused belongs relates sufficiently to the crime charged to be relevant. It may be the rule would be different if the threats were attempted to be shown accompanying a defense of self-defense. Then, of course, the knowledge of the accused of the threat would have to be shown and that it concerned him individually to the extent of placing him in fear of great bodily harm at the hands of the individual who made the threat. Here we are not confronted by that situation, and it would seem reasonable to require the accused to show that the malice indicated by his utterances was not inclusive of the person he struck. In the case before us, instead of doing so, the accused denied making the statement. We realize, of course, that testimony of this nature is necessarily subject, in the first instance, to the consideration of the trial court, and that it is difficult to establish controlling general principles. However, in this case we think that no prejudicial error has been shown.

Error is assigned to statements made by the prosecuting attorney in final argument concerning the relationship between the accused and Mrs. Shade and the fact that the accused's wife was not present at the trial. The statements under attack were improper, but the trial court's attention was not directed to them. In the absence of that foundation, they will not be considered on this writ of error. Derogatory and disparaging statements may militate against the interest of the person making them. To permit the accused to be benefited by that possibility, where their repetition was without opposition, and allow him to say, when his original position did not achieve the desired result, that he has been injured would enable him to assume an inconsistent position during the course of a trial which, unless carefully guarded by the court, would

contravene the ends of justice. *Landers* v. *Ohio River R. Co.*, 46 W. Va. 492, 33 S. E. 296; *State* v. *Johnson,* 49 W. Va. 684, 39 S. E. 665; *State* v. *Clifford,* 58 W. Va. 681, 52 S. E. 864; *State* v. *Statler,* 86 W. Va. 425, Pt. 2, Syl., 103 S. E. 345; *McCullough* v. *Clark,* 88 W. Va. 22, Pt. 6, Syl., 106 S. E. 61; *Black, Adm'r.* v. *Peerless Elite Laundry Company,* 113 W. Va. 828, 169 S. E. 447.

Based upon defendant's Bill of Exceptions No. 5, error is assigned to the trial court's action in responding to the jury's inquiry as to the form of the verdict. After the jury had retired, a deputy sheriff, who had the jury in charge, informed the judge that the jury had informed him they did not know how to word the verdict, and that they desired the judge to tell them how to do so. Thereupon the court directed the sheriff to bring in the jury and from the bench inquired, "I understand you want to find a verdict but do not know how to word it." Upon receiving an affirmative answer, the court told the jury to try to word the verdict and return it and, if necessary, the court would put it in proper form. The jury then retired and returned with the following verdict: "We the jury find the defendant Norman Files not guilty as charged in the indictment but find him guilty of unlawful wounding feloniously and maliciously with intent to do bodily injury". Thereupon, by agreement of counsel on both sides, the court verbally explained that "the jury's verdict was possibly the result of a misconception of the law", and that if the evidence did not convince them that the wounding was done maliciously, then the jury's verdict should be "not guilty of malicious wounding but guilty of unlawful wounding as charged in the indictment", whereupon the foreman stated that the jury's difficulty was that they did not find that defendant's intent was to kill the prosecuting witness, that they thought his intent was merely to disable Hutsler. The court then instructed the jury that the intent did not have to be to kill but that the intent to maim or disable or kill would be sufficient to support a verdict of guilty as charged, "so far as the element of intent was concerned." The jury then returned and the court accepted the following verdict: "We, the jury, find the de-

fendant Norman Files guilty as charged in the indictment." The defendant then made motions in arrest of judgment, that the verdict be set aside and a new trial awarded, which motions were overruled and the defendant excepted to the court's rulings. The last-mentioned verdict was the only one accepted by the court, and the judgment was based thereon. No objection or exception was had to the proceedings had upon the jury's inquiry. On the contrary, they were by agreement of counsel.

In *Danks* v. *Rodehaver,* 26 W. Va. 274, 276, Judge Green, speaking for the Court, said: *"if errors of any sort are committed by a court in its rulings during the trial of a case by a jury, the appellate court cannot review these rulings, unless first they are objected to when made, and the point then saved, and a bill of exceptions taken showing these rulings during the term of the court * * *."* (Italics unsupplied.) See also *Core* v. *Maple,* 24 W. Va. 354, syl., opinion by Judge Snyder, stating reasons for rule, pages 355, 356; *Wickes* v. *B. & O. R. Co.,* 14 W. Va. 157, Pt. 1, syl.; *Freeburn* v. *B. & O. R. Co.,* 79 W. Va. 789, 790, 91 S. E. 990. The rule likewise applies to criminal cases. Thus in *State* v. *Bragg,* 105 W. Va. 36, 141 S. E. 400, this Court held that a remark of a trial court, not objected to when made, is ordinarily not reviewable on appeal. See generally, *State* v. *Gibson,* 67 W. Va. 548, 68 S. E. 295, 28 L. R. A. (N. S.) 965; *State* v. *Baker,* 84 W. Va. 151, 99 S. E. 252; *State* v. *Driver,* 88 W. Va. 479, 107 S. E. 189, 15 A. L. R. 917; *State* v. *Friend,* 100 W. Va. 180, 130 S. E. 102; *State* v. *Bailey,* 103 W. Va. 605, 138 S. E. 202.

This case should be distinguished from *State* v. *Richmond,* decided October 24, 1942, and *State* v. *McGinnis,* 116 W. Va. 473, 181 S. E. 820, involving, respectively, a void warrant and indictment; and *State* v. *McCausland,* Pt. 4, syl., 82 W. Va. 525, 96 S. E. 938, and *State* v. *Fugate,* 103 W. Va. 653, 138 S. E. 318, in which this Court held that the error was such that it could not be waived. Under these authorities it seems to us that we do not reach the merits of the question presented by the defendant's Bill of Exceptions No. 5; nevertheless, we have considered the

question on its merits, and are of opinion that no prejudicial error was committed by the trial court in making answer to the jury's inquiry.

The judgment of the trial court is affirmed.

*Affirmed.*