STATE OF WEST VIRGINIA

*v.*

BUD PETERSON

(No. 10027)

Submitted September 28, 1948.   Decided

December 7, 1948.

100

*Damron & Damron, W. F. Damron* and *O. D. Damron,* for plaintiff in error.

*Ira J. Partlow,* Attorney General, and *W. C. Marland,* Assistant Attorney General, for defendant in error.

RILEY, PRESIDENT:

The defendant, Bud Peterson, charged with the murder of Bessie Wright on June 29, 1947, was convicted in the Circuit Court of Logan County of murder of the first

degree without recommendation, and sente.ced to be hanged. To this judgment of sentence, he prosecutes this writ of error.

Defendant came to the State of West Virginia from the State of Alabama in 1920. From 1925 until the time of his arrest for the alleged homicide, he had been continuously employed as a coal miner in Logan County, and when arrested he was living in the town of Riley, in Logan County, located approximately fifteen miles from the City of Logan. A bonus having been paid to the miners on June 28, 1947, Peterson, as well as other miners in Logan County, did not work.

At the trial, in order to controvert the State's position that defendant shot and killed decedent, defendant set up an alibi as his sole defense. It therefore becomes necessary to review the evidence in this case, bearing on the question of defendant's whereabouts at the time and place of the homicide.

According to the State's evidence, defendant was in the vicinity of the town of Riley from about two o'clock in the afternoon of June 28, 1947, until the time he was arrested about two o'clock in the morning of the following day. About midnight of June 28, he came to the home of William McCreery, whose home adjoins the house in which decedent, Bessie Wright, resided, and in which she met her death, and tried to borrow five dollars for the purpose of entering a poker game. Upon his request being refused, he stated that he would go to the Wright home and get the money "or raise sand." Defendant then left the McCreery home, and was seen by McCreery and his wife to proceed across the lot between the two houses and then go up on decedent's porch. According to McCreery, who is corroborated in substantial detail by his wife, defendant "hollered and knocked on the door". Receiving no answer, he yelled that if decedent did not open the door, "he would take an axe and knock the damn thing down." But still receiving no re-

sponse, he tore the screen off the window, raised the window, and went into the house. McCreery said that he was able to see defendant because there was a light over a sign between the two houses, and defendant evidently had turned on a light in decedent's kitchen, so that the witness "could see in there." Mrs. McCreery testified that, by a light on decedent's porch, she could see defendant on the porch trying to push in the door leading into the house, and that he went to the window, pried off the screen, opened the window, and entered the house. Both witnesses testified that shortly thereafter they heard a shot, and after a short interval two more shots. In a short time deceased's two sons, George Wright, Jr., age seven, and Bowzer Wright, age five, came running across the lot to the McCreery house and informed the McCreery's that their mother had been shot. Thereupon, McCreery went to the decedent's home, where he found decedent's body lying on the floor of the upstairs bedroom. He then went to a nearby house, where decedent's estranged husband was living, and told him what had happened. The sheriff and an ambulance were called, the ambulance arriving about an hour later. At the trial, George, the older of the two boys, testified that he "saw" the defendant fire the shots which killed his mother.

Also according to the State's evidence, defendant was seen in a car driven by one Isaac Martin, and shortly thereafter, while defendant was walking along the road, he was arrested by a deputy sheriff, taken to the room in which decedent's body was lying, and then to jail.

One Dennis Bradford testified that he was an occupant of the Martin car at the time defendant was also an occupant, and shortly after defendant left the car, he found a gun, which he kept for some time until, upon request of the State Police, he turned it over to them.

According to all of the State's witnesses, the shooting occurred some time between 12:30 and 1:00 o'clock in the morning of June 29, 1947. The McCreerys testified that defendant came to their house about midnight.

Luther Creasey, who lived in a house next door to the McCreerys on the side opposite from that of the house occupied by Bessie Wright, testified that he heard three shots shortly before defendant was arrested; and he fixed the time of the shooting at exactly 12:45 a. m., at which time he set his watch by the radio. Richard Herald, deputy sheriff, testified that between 12:30 and 1:00 o'clock in the morning of June 29, he received a call concerning the shooting in the office of a justice of the peace at Man, and that he drove directly to the Wright house, arriving there before the ambulance.

On the other hand State's witness, Isaac Martin, testified that he, together with State's witness, Dennis Bradford, picked up defendant between 11:30 and midnight on June 28—not later than a little after midnight; that with Bradford sitting in the front seat and defendant in the back seat, they drove to Riley, where the ambulance and other cars were seen in the vicinity of the Wright house; and that defendant remained in the Martin car until after they left the scene of the homicide. Shortly after leaving the vicinity of the Wright house, defendant left the car at Martin's request. Witness then drove the car a short distance farther along the road with Bradford still sitting in the front seat. Then turning back toward the place where defendant had alighted, he saw defendant standing at the side of the road under arrest.

In general the testimony of defendant and State witnesses, Bradford and Martin, bearing on the question of defendant's whereabouts from the time he entered the car until his arrest coincides in substantial detail, but according to the State's evidence, it took more than an hour for the ambulance to get to the scene of the shooting, and, according to defendant's evidence, Martin picked up defendant around midnight on June 28, and arrived at the scene of the shooting after the arrival of the ambulance. So there is a clear conflict in the evidence as to defendant's whereabouts at the time of the homicide. As Martin testified that immediately after the

defendant entered Martin's car at Martin's home at Brae-holm, a distance which he estimated between one-half and three-quarters of a mile from Riley, he proceeded directly to Riley, which he said required between fifteen and twenty-five minutes, and the fact that he arrived at the Wright home after the ambulance strongly indicates that he and Bradford did not encounter defendant until about an hour after midnight on June 29, in which event there would be almost an hour of defendant's time not accounted for, and the jury would have the right to believe that Martin and Bradford were mistaken as to the time they met defendant and that, in fact, defendant was taken into the Martin car after the homicide was committed. So we think that the evidence is such as to justify the jury in disbelieving defendant's alibi, as it evidently did.

During the course of the trial, George Wright, Jr., age seven, was given the oath regularly administered to adult witnesses, and, without any preliminary or other examination on the part of the trial court, was examined by the prosecuting attorney on the question of his competency as a witness, and then subjected to direct examination by the prosecuting attorney. Finally, he was cross-examined on behalf of the defendant by the latter's attorneys. On direct examination the witness testified that he and his brother were at home on the night their mother was killed; that after they had gone to bed in the room occupied by their mother, someone was heard coming up the stairs; that he saw the defendant turn on the light in the bedroom; that defendant had a gun in his hand, which witness testified he had seen before; that defendant asked decedent to give him some money, threatening that if she did not he would shoot her; and that after decedent told defendant she did not have any money, defendant fired one shot at decedent, and there-upon the children went under the bed; and that then one more shot was fired, causing decedent, who was standing up, to fall to the floor. When, according to George's testimony, the children heard defendant go out the screen

door, they came from under the bed, looked at their mother who was lying on the floor, tried to talk to her, but eliciting no response, they went to the McCreery home.

Immediately before and at the conclusion of the preliminary examination conducted by the prosecuting attorney, bearing on the competency of the infant witness, George Wright, Jr., defendant's counsel objected to the witness testifying and the court, upon overruling the objection made at the close of the preliminary examination, ruled that the witness was competent to testify, and, without objection on defendant's part or motion that the jury be instructed to disregard the remark, stated in the presence of the jury: "This seems to be a very bright boy for his age. Son, when they ask you questions you just tell the truth."

After a careful consideration of the evidence in this case, we are of opinion that it is sufficient for the jury to have found, as it did, that the defendant, Bud Peterson, is guilty of the wilful, deliberate, premeditated and unlawful killing of the decedent, Bessie Wright; and further we are of the opinion that it was for the jury to find that the defendant, Bud Peterson, did not establish by a preponderance of the evidence defendant's defense of an alibi, and there being substantial evidence tending to prove the actual presence of the accused at the place where, and at the time when, the crime was committed, the conviction should stand, unless other alleged errors appear in the record. *State v. Lowry,* 42 W.Va. 205, 24 S.E. 561; *State v. Aliff,* 122 W.Va. 16, 7 S.E. 2d 27.

The defendant assigns five main grounds of error, which for convenience will be considered *seriatim*: The trial court erred: (1) In admitting (a) the testimony of George Wright, Sr., concerning Bud Peterson visiting Bessie Wright after she and her husband began to live separate and apart; (b) the testimony of William McCreery identifying a pistol which witness had not seen

on the day of the homicide and could not state postively that it was used by the defendant in committing the homicide; and (c) the testimony of George Wright, Jr., age seven, whose competency as a witness defendant asserts was not established; (2) in stating, without any objection on defendant's part, on ruling that George Wright, Jr., was competent to testify, "This seems to be a very bright boy for his age. Son, when they ask you questions you just tell the truth."; (3) in permitting George Wright, Jr., without objection by defendant, to be sworn prior to his preliminary examination, and failing to cause the witness to be sworn after such preliminary examination was completed; (4) in permitting the prosecuting attorney to examine the infant, George Wright, Jr., on the preliminary or test examination and by failing to conduct such examination himself; and (5) in giving State's instruction No. 1, without incorporating in that instruction defendant's defense of alibi.

The testimony of George Wright concerning the defendant's visiting Bessie Wright after she and her husband began to live apart, in our opinion, does not constitute prejudicial error. This testimony is relevant to show that defendant knew Bessie Wright intimately, and, therefore, tends to render more credible the testimony of the McCreerys that defendant went to Bessie Wright's house late in the night. True, Wright was asked: "What was the cause of the trouble between you and your wife Bessie", to which the witness answered, "Couldn't get along". But this question and answer were not objected to, and though objections were made to the State's inquiry whether any man or woman was involved in the Wright's domestic trouble, and whether witness had ever seen Bud Peterson in the Wright home after the separation, these inquiries did not connect the defendant with the separation between husband and wife, and the other questions addressed to the witness as to the frequency of defendant's visiting the Wright home after the separation went into the record without objection.

Since the defendant in the first instance introduced into evidence the subject of pistols and the fact that the defendant had owned one, and the pistol shown to the witness was later connected with the commission of the alleged crime, the introduction of McCreery's testimony did not serve, in our opinion, to prejudice defendant. Especially is this so because the witness testified, without objection or motion to strike, that the pistol exhibited to him was just like the one he saw in Bud Peterson's possession, "If it is the one it has been rubbed and shined up." The pistol which was exhibited in the court room was found by Dennis Bradford in the Isaac Martin car soon after the defendant got out of the car on the morning of the homicide. Both Martin and Bradford testified that they had not placed the pistol in the car. The defendant himself testified that he owned a pistol, and the witness, George Wright, Jr., testified that he had seen the pistol with which defendant killed his mother in defendant's possession in the Wright home on several previous occasions. So we think there is sufficient evidence from which the jury could believe that the gun taken from the Martin car belonged to defendant, and that it had been used by defendant to kill Bessie Wright. It is not necessary in the trial of an indictment for murder that the instrument purported to have been used in the commission of the crime be established beyond peradventure. It is sufficient if the evidence tends to show that the instrument was used in the perpetration of a crime, and upon such showing it may be produced for the inspection of the jury. *State v. Henry*, 51 W.Va. 283, 41 S.E. 439.

We find no error as to the testimony of George Wright, Jr. He was fully examined by the prosecuting attorney without objection by defendant on the question of his competency as a witness. True, in the preliminary examination by the prosecuting attorney, the witness testified that in Sunday School he learned that the devil gets people who sometimes do not tell the truth. But, in *State v. Farley*, 125 W.Va. 266, 23 S.E. 2d 616, a child

eight years of age who testified that "She realized she would go to the 'boogerman' if she did not tell the truth" and refused several times to respond to questions which she did not understand, was held qualified to testify. In the instant case, this little boy, only seven years of age, testified on the preliminary examination bearing on his competency as a witness that he was in the second grade at school and had attended Sunday School. He gave the names of his teacher in the first grade and in the second grade, and, on request, proceeded to count to twenty-four, when he was stopped by counsel. He also successfully solved a simple problem in addition. This witness was indeed well qualified to testify.

The statement of the trial court at the conclusion of the preliminary examination of George Wright, Jr.: "This seems to be a very bright boy for his age. Son, when they ask you questions you just tell the truth" is urged as a ground for reversal. No objection or motion that the jury be instructed to disregard the remark was made by defendant's counsel. We are well aware of the rule which prevails in this and other jurisdictions that though a trial court has wide discretion in ruling and remarking on the examination of witnesses, the admissibility of testimony, and the conduct and statements of counsel, the remark in question went somewhat beyond the province of the court in ruling on the competency of the infant witness. Because of the trial judge's high official position, he should be very careful that he does not by inadvertent remarks influence the jury in favor of or against a witness' testimony. *Pinn v. Commonwealth,* 166 Va. 727, 186 S.E. 169; Lee, The Criminal Trial in the Virginias, 2d ed., Volume 1 Section 165; *State v. Austin,* 93 W.Va. 704, 117 S.E. 607; *Musgrave v. Ku Klux Klan,* 102 W.Va. 320, 323, 135 S.E. 185; *State v. Perkins,* 130 W.Va. 708, 45 S.E. 2d 17. And though the remark or ruling objected to may be inadvertent, the question for the appellate court is whether the remark or ruling has had a deleterious effect on the jury. *State v. Ownbey,* 146 N.C. 677, 61 S.E. 630. But in the instant case the

court was simply ruling on the competency of the witness. In order to permit the witness to testify he had to rule that the witness was intelligent enough to know and understand questions which would be addressed to him. His remark was perhaps steeped in language too complimentary; but the record here discloses that the witness was indeed a very bright boy for his age, and that he was fully competent to testify, which was apparent to the jury. However, the failure of defendant's counsel to object or move for an instruction renders the error, if there be one, nonreversible. *State v. Bragg*, 105 W.Va. 36, 141 S.E. 400.

The fact that the trial court, without objection or motion, failed to cause George Wright, Jr., to be sworn prior to his examination in chief is without merit. The record disclosing that the witness prior to giving any testimony was "first duly sworn", the oath administered evidently was the conventional one for all witnesses and is sufficient for all purposes.

That the trial court permitted the prosecuting attorney to question the witness, George Wright, Jr., on the test examination and failed to conduct such examination himself, is the fourth ground of error. Of course, it is the duty of the trial court to pass on the competency of an infant witness, and it is stated in Underhill's Criminal Evidence, 4th ed., Section 377, page 725, that: "It is the duty of the court to examine a child witness in order to ascertain if he or she is competent." But whether the trial court, in the first instance, should conduct such examination is of no moment under the state of this record, because young Wright was fully and painstakingly given that examination by the prosecuting attorney and counsel for defendant did not object to the examination. The trial court, though he failed to, did not refuse to conduct the examination for he was never asked by counsel to do so. In *State v. Price*, 96 W.Va. 498, 123 S. E. 283, a child eight years of age was examined after having been placed under preliminary ex-

amination by a special prosecuting attorney. No objection in the trial of that case was made to the special prosecuting attorney conducting the examination, and no request was made that the trial court also examine the child. It is interesting, however, to note that the special prosecuting attorney, who conducted that examination, is counsel for defendant in this case. This ground of error not being based upon constitutional or jurisdictional grounds, it cannot be raised in this Court for the first time. *State v. Sutfin,* 22 W.Va. 771; *State v. Wright,* 91 W.Va. 500, 113 S.E. 764; *State v. Files,* 125 W.Va. 243, 24 S.E. 2d 233.

Finally, defendant complains that the trial court erred in giving to the jury State's instruction No. 1, which reads: "The Court instructs the jury that a man is presumed to intend that which he does, or which is the immediate or necessary consequence of his act, and if the prisoner, with a deadly weapon in his possession, without any, or upon very slight provocation, gives to another a mortal wound, the prisoner is prima facie guilty of wilful, deliberate and premeditated killing, and the necessity rests upon him of showing extenuating circumstances, and unless he proves such extenuating circumstances, or the circumstances appear from the case made by the State, he is guilty of murder in the first degree. * * *" This instruction is objected to on this writ of error on the grounds that: (1) It was calculated to impress the jury that the trial court was of the opinion that defendant was present at the homicide; (2) the instruction is abstract and has no application to the facts of this case; and (3) the instruction omits reference to the defense of alibi. *State v. Clough,* 327 Mo. 700, syl. 10, 38 S.W. 2d 36; *State v. Helms,* 131 Tex. Cr. 358, pt. 1, syl., 99 S.W. 2d 303; *State v. Hanna,* 81 Utah 583, pt. 8, syl., 21 P. 2d 537, and several kindred cases are cited for the proposition that an instruction which assumes that an offense was committed, or that certain elements of an offense were shown, constitutes reversible error, and because the instruction does not express-

ly set up in its hypothesis defendant's defense of alibi, defendant contends that the instruction is erroneous under the last-mentioned authorities. We agree with counsel for defendant that an instruction should have reference to the facts in the case on trial. *State v. Whitt,* 96 W.Va. 268, 122 S.E. 472; *State v. Lane,* 116 W.Va. 636, 182 S.E. 784. But the instruction in question does not have the vice indicated by counsel for defendant. It does not assume that the defendant was present at the time Bessie Wright was killed. The pertinent part of the instruction reads: "* * * if the prisoner, with a deadly weapon in his possession, without any or upon very slight provocation, gives to another a deadly wound, the prisoner is prima facie guilty of wilful, deliberate and premeditated killing, * * *". This instruction is based upon the often cited and approved case of *State v. Cain,* 20 W.Va. 679, and the giving of it is not error if it does not assume defendant's presence at the time and place of the homicide, but the use of the word "if" tells the jury that if they believe that the defendant did the things specified in the instruction, which the court told the jury would constitute murder of the first degree, defendant would be guilty of such crime. From the instruction the jury could readily see that if the defendant were not present at the time of the homicide, he could not have done those things. So, the instruction, instead of assuming that defendant was present at the time of the homicide, and therefore had no alibi, left the question of alibi open to the consideration of the jury. The instruction, therefore, is not binding on the question of alibi and the defense on that ground is fully covered by defendant's instruction No. 6, which reads: "The Court instructs the jury that the defense in this case is what is called in law an alibi and that such defense does not require a preponderance of the evidence, and if the jury believes from all the evidence and circumstances in this case that the defendant, Bud Peterson, was at Braeholm, at, the time the killing is alleged to have been done, then the court instructs the jury that they should find the defendant not guilty and the jury is further in-

structed that if from the whole evidence they should entertain a reasonable doubt as to whether the prisoner, Bud Peterson, was at Riley & the home of Bessie Wright, at the time of the alleged killing, that, under the law it would be their sworn duty to give the prisoner, Bud Peterson, the benefit of such doubt and find him not guilty."

For these reasons we do not think the defendant was prejudiced by the giving of State's instruction No. 1, and that defendant was fully protected by the giving of that instruction, together with his instruction No. 6.

The foregoing disposes of all the grounds of error relied upon by defendant's counsel in their brief, and perceiving no reversible error in this record, we affirm the judgment of the circuit court.

*Affirmed.*